## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**U & I CORPORATION**,

        Plaintiff,

vs.                                                                **Case No.: 8:06-CV-2041-T-17EAJ**

**ADVANCED MEDICAL DESIGN, INC.**,

        Defendant.

_____/

### <u>ORDER</u>

Before the court are **Defendant's Motion for Sanctions** (Dkt. 41), **Plaintiff's Response in Opposition to Defendant's Motion for Sanctions** (Dkt. 42), **Defendant's Motion for Protective Order and Motion for Sanctions** (Dkt.77), **Defendant's Second Motion for Sanctions** (Dkt 81), **Plaintiff's Response in Opposition to Defendant's Motion for Protective Order, Motion for Sanctions and Second Motion for Sanctions** (Dkt. 84), **Defendant's Motion to Compel and Motion for Sanctions** (Dkt. 92)**, Plaintiff's Response in Opposition to Motion to Compel and Motion for Sanctions** (Dkt. 101)**, Defendant's Notice of Filing Declaration of L. Joseph Shaheen in Support of Motion for Sanctions** (Dkt. 105) and **Plaintiff's Notice of Compliance and Chronology of Document Production** (Dkt. 112).

Pursuant to Fed. R. Civ. P. 37, Defendant Advanced Medical Design, Inc. ("AMD") seeks sanctions against Plaintiff  U&I Corporation ("U&I") for U&I's failure to produce responsive documents in a timely manner, refusal to produce all responsive documents and violation of  prior court orders.  AMD also seeks an order to quash seven non-party subpoenas that were served after the discovery deadline.

U&I asserts that sanctions should be denied because it has timely produced all documents

in response to AMD's discovery and fully complied with the court's orders.  In reference to the

motion for a protective order to quash the non-party subpoenas, U&I contends that the subpoenas

are directly relevant to the issues in dispute.

### I.      FACTUAL BACKGROUND

U&I sells medical equipment and is headquartered in Korea. (Dkt. 1)  AMD, a Florida

company, marketed and sold U&I's products in Latin America under a 2002 agreement between the

parties. (Id.)  Specifically, the products awarded to AMD under the agreement included U&I's

OPTIMA Spinal System line of products and other spinal implants and trauma products.

On October 16, 2006, U&I filed this case against AMD for breach of contract, account

stated, open account, and unjust enrichment for AMD's failure to pay its outstanding balance in

2005 and 2006. (Id.)  AMD counterclaimed for breach of contract alleging, among other things, that

U&I breached the agreement when it failed to deliver products within the time requirements of the

contract, failed to offer AMD new products as required by the contract, and entered into an

agreement with a third party to distribute the same products covered by the agreement with AMD.

(Dkt. 8)

### II.     PROCEDURAL BACKGROUND

On January 19, 2007, AMD propounded its First Request for Production of Documents.  On

March 14, 2007, U&I produced 507 documents in response to AMD's discovery request. (Dkt. 112

at 3)  U&I produced 21 pages of documents to AMD on April 16, 2007.  (Dkt. 112 at 3)

On April 17, 2007, AMD filed a motion to compel production of documents and a privilege

log. (Dkt. 19)  By order of July 13, 2007, the court granted in part and denied in part AMD's first

motion to compel.  (Dkt. 34)  U&I was directed to produce  responsive documents dating back to

January 1, 2003.[1]  (Id.)  Pursuant to the court's order, all responsive documents were to be produced by August 2,  2007.

During the month of August 2007, U&I produced approximately 1,085 documents.[2]  (Dkt. 112 at 4-5)   On  September 18, 2007, U&I produced 703 documents in response to AMD's discovery request.  (Dkt. 112 at 5)    During the month of October 2007, U&I produced 297 documents to AMD.[3]  (Dkt. 112 at 6)  On three separate dates in November 2007, U&I provided AMD with approximately 1,088 documents.[4]

A.  <u>AMD's Motion For Sanctions (Dkt. 41)</u>

---

[1]  The court ordered U&I to produce documents regarding:  (1) the right to distribute U&I's products or any spinal and trauma implant line of products; (2) the development, regulation, or registration of PRIMA and other U&I trauma spinal and implant products; (3) information submitted to government agencies that relate to OPTIMA certifications or certifications of any other U&I trauma and spinal implant line under development; and (4) the names of distributors of OPTIMA or any other U&I spinal and trauma implant line.  (Dkt. 34 at 5)  The undersigned also ordered U&I to produce documents relating to production scheduling reports for OPTIMA or any other trauma implant line for the years 2004 and 2005 but excluded "off-prescription"/custom use products (those produced on a small scale for high use doctors) because they are outside of the agreement with AMD.  Finally, U&I was ordered to produce all correspondence under its control from January 1, 2003 until the present date between Zimmer Spine and OPTIMA distributors or distributors of any other U&I products.  (Id.)

[2]  On August 1, 2007, U&I produced 932 documents in response to AMD's document requests; on August 13, 2007, U&I produced 175 documents; on August 17, 2007, U&I produced 78 pages of documents.  (Dkt. 112 at 4)

[3]  On October 10, 2007, U&I produced 232 documents; on October 11, 2007, U&I produced 7 documents; on October 16, 2007, U&I produced 56 documents; and on October 24, 2007, U&I provided 2 pages.  (Dkt. 112 at 6)

[4]  On November 6, 2007, U&I produced approximately 587 documents to AMD.  (Dkt. 112 at 6)  On November 21, 2007, U&I provided 13 documents to AMD.  (Id.)  On November 28, 2007, U&I produced approximately 488 documents to AMD.  (Id.)

On August 28, 2007, AMD filed a Motion to Compel and Motion for Sanctions arguing that U&I failed to produce documents covered by the court's July 13, 2007 order.  (Dkt. 41)  AMD alleged that U&I failed to produce documents, including 2004 e-mails, attachments to all e-mails, executed copies of agreements, registration documents,  and documents submitted to government agencies.  (Dkt. 41 at 4)

In response, U&I alleged that its employees were "subject to prior international travel requirements that slowed the process and the server problems associated with 2004 documents further slowed this production."  (Dkt. 42 at 3) Additionally, U&I contended that "confusion, software formatting, language barriers and understanding of the US legal system" delayed document production.  (Id.)  Further, U&I's counsel stated that he received e-mails from his client regarding the production of documents but was unable to open the e-mails, which delayed the production process.   (Id.) As of September 12, 2007, U&I insisted that it had produced all responsive documents.  (Id. at 5)  Due to a computer error following a server change that occurred prior to this litigation, U&I contended that all 2004 e-mails were "unloadable," and therefore, could not be produced.  (Dkt. 42 at 6-9)   U&I represented that it had no hard copies of any 2004 e-mails and no internal or external correspondence from 2004 to produce.  (Dkt. 68; Dkt. 69 at 9)   U&I agreed to supplement its discovery responses for evidentiary purposes to clarify its position that it produced all responsive documents under its control.   (Dkt. 69 at 9)

By order of November 26, 2007, the court directed the parties to file a stipulation regarding the production of e-mail attachments and ordered U&I to file an amended discovery response.  (Dkt. 69 at 9)  The court deferred ruling on AMD's motion to compel inspection of the hard drives of U&I's computers pending the production of 2004 e-mails by a non-party, Zimmer Spine, Inc.

("Zimmer Spine").  (Dkt. 69 at 10)

Regarding AMD's request for sanctions, the court found that U&I did not inform AMD that its 2004 e-mails were unobtainable in its discovery responses.  (Dkt. 69 at 10)  Instead, U&I's counsel waited until after the time period had passed for it to comply with the court's July 13, 2007 order to advise AMD of his client's computer problems.  (Id.)  Without more information as to how the error occurred or what steps were taken to retrieve the information, it could not evaluate U&I's conclusory statement that U&I's deletion of all 2004 e-mails was made in good faith and any noncompliance was harmless.  (Id.)  Consequently, the November 26, 2007 order directed U&I to submit the affidavits of U&I's corporate representative detailing why the e-mails were "unloadable" and the efforts the company had undertaken to retrieve the information.  (Id. at 11)

B.  U&I's Production and the Parties' Filings Pursuant to Court's Orders

On November 27, 2007, the parties filed a stipulation regarding U&I's production of attachments to e-mails during 2003 and 2005 through 2007.  (Dkt. 70)  Pursuant to this stipulation, U&I agreed to produce all 2003 e-mails and attachments within 20 days, 2005 e-mails within 20 days and 2006 and 2007 e-mails and attachments within 30 days of the filing of the stipulation. (Dkt. 70 at 1)

On December 3, 2007, U&I filed an amended response to AMD's First Request For Production of Documents alleging that all responsive documents had been served upon AMD.  (Dkt. 72)   Nevertheless, during the month of December 2007 and January 2008, U&I produced approximately 8,511 documents in response to AMD's document requests.[5]  (Dkt. 112 at 7)

---

[5]  On December 10, 2007, U&I produced 1,042 documents; on December 24, 2007, U&I produced 3,896 documents; on December 26, 2007, U&I produced 2,649 documents; on January 15, 2008, U&I produced 520 documents; on January 16, 2008, U&I produced 39 pages.  (Dkt. 112 at

Pursuant to the court's November 26, 2007 order, on December 6, 2007, U&I filed an affidavit of its corporate representative addressing the "unloadable" 2004 e-mails. (Dkt. 73)  The affidavit of Jay Jung ("Jung"), Vice President of Business Development for U&I, stated that U&I discovered in January 2005 that there was a problem with its hard drive server.  (Dkt. 73-2 at 2, ¶¶ 3-4)  According to Jung, the failure of the hard drive caused the 2004 e-mail account to be "unloadable" or unretrievable.  (Id. at ¶ 5)  Jung asserts that, in late January 2005, the hard drive was disposed of following a company practice of disposing of broken computers.  (Id. at ¶ 9) Further, Jung stated that it is "corporate policy to keep all data including e-mail information from employees (past and current) on the main server to assist in prompt access and transition to the current employees."  (Id. at ¶ 10) Jung referred to and attached to his affidavit a copy of a report dated January 1, 2005 which concluded that  "due to severe scratch" on the hard disks, restoration of the data stored on the disks was not possible.  (Dkt. 74-2 at 1)  The inspection was conducted by Samkyung D & L, a company Jung hired to assist with the server problem and loss of data.

After considering U&I's affidavit and data report, the court deferred  ruling on AMD's request for sanctions and request to inspect the hard drives of certain U&I employees pending the parties' filing of a joint status report. regarding whether Zimmer Spine produced to AMD the 2004 e-mails at issue. Dkt. (Dkt. 80)

On January 4, 2008, the parties filed a joint status report stating that Zimmer Spine narrowly interpreted AMD's discovery request as applicable to only the Latin American territory and produced a limited number of documents.  (Dkt. 86 at 2)  After AMD and Zimmer Spine discussed

---

7)  U&I asserts that 559 of these documents were re-produced to AMD because an error in the numbering of these documents.  (Id.)

the scope of the subpoena, Zimmer Spine agreed to produce additional documents on January 11, 2008. (Id.) Although the parties agreed to provide the court with a status report as to the production of the 2004 e-mails no later than January 18, 2008, no report was filed. (Id. at 4)

      C.      <u>AMD's Motion to Compel and Motion for Sanctions (Dkt. 92)</u>

      On February 4, 2008, AMD filed a motion to compel asserting that U&I failed to produce all responsive documents pursuant to its prior motions to compel and court orders. (Dkt. 92) AMD contends that Zimmer Spine's production of documents, including 2005 and 2006 e-mails between Zimmer Spine and U&I, demonstrates that U&I has not complied with the court's prior orders.[6] AMD asserts that U&I should have produced the documents AMD received from Zimmer Spine because these 2005 and 2006 documents would not have been affected by U&I's 2005 server problem which allegedly caused all 2004 e-mails to be "unloadable." (Id. at 9) Second, AMD maintains that U&I failed to produce documents from the computer of Paul Silverberg ("Silverberg"), counsel for U&I, and e-mails from the personal e-mail account of Jung. Likewise, AMD asserts that the documents of Silverberg and Jung are not affected by U&I's 2005 server problems. (Id. at 10) Third, AMD notes that U&I failed to produce any U&I internal correspondence generated by employees.[7] (Id. at 10-11) At the hearing on these motions, AMD

_____

    [6] To support its position, AMD cites to a four page list of 2005 and 2006 e-mails from Zimmer Spine to U&I. (Dkt. 92 at 5-9) AMD contends that the subject matter of the documents produced by Zimmer Spine bear directly on AMD's counterclaim because they relate to U&I's worldwide distribution agreement with Zimmer Spine, U&I's intentional termination of existing distributors and U&I's development of new products with Zimmer Spine which were not first offered to AMD. (Id. at 9)

    [7] AMD also alleges that, because U&I is subject to Food and Drug Administration ("FDA") regulations, U&I is required to maintain records and back up computer information systems regarding the importation of medical device products. (Dkt. 92 at 10) In ruling on AMD's motions for sanctions, it is unnecessary to address this issue which has not been sufficiently developed in the

submitted a chronology of U&I's production of documents.

Alleging improper discovery conduct on the part of U&I, AMD seeks an order striking U&I's pleadings.  In the alternative, AMD requests that the court compel U&I to produce for examination by an independent third party the hard drives of Silverberg, all the hard drives utilized by Jung, and the hard drives used by Mickey Gwak ("Gwak") and Sean Hur ("Hur") because these hard drives may contain responsive documents.  (Id. at 11-12) To protect the divulging of confidential and non-responsive documents, AMD requests that the independent inspection be subject to a protocol established by the court and be limited to the production of information that the court directed U&I to produce pursuant to the court's order of July 13, 2007.[8]  (Id. at 12-13) AMD also seeks monetary sanctions against U&I;  AMD requests an award of $66,321.09 for the reasonable attorneys' fees and costs incurred in filing relevant discovery motions.  (Dkt. 105) Attached to AMD's motion is a Declaration by L. Joseph Shaheen,  Esquire detailing  a list of the attorney's fees billed or recorded in connection with U&I's production of documents, failure to produce documents, lack of cooperation during discovery, and improperly served subpoenas and an  Attorneys' Fees Chart summarizing activities undertaken between March 14, 2007 and January 16, 2008 by the law firm representing AMD.  (Dkt. 105, Ex. A)

U&I opposes AMD's motion to compel and motion for sanctions, contending that the  fact that Zimmer Spine produced documents from U&I employees and counsel does not  establish that

record..

[8]  AMD also requested that U&I be required "to produce a witness to address the discovery concerns" outlined in the motion and to pay for fees and costs associated with the motion.  (Dkt. 92 at 12-13)   At the hearing, AMD withdrew this request.  (Dkt. 106)

U&I intentionally withheld documents from AMD.  (Dkt. 101)  U&I asserts that it has produced and/or identified over 14,500 documents in response to AMD's discovery requests.  (Id. at 6)  In response to AMD's chronology of the discovery dispute, U & I filed its own chronology of document production in this case.  (Dkt. 112)

As to Silverberg's e-mails, U&I contends that these e-mails date back only to January 2006. (Dkt. 101 at 3)  U&I further asserts that, after a review of Silverberg's e-mail system, including "dumped historic e-mails," no responsive and unprivileged documents were located.  (Id. at 4)  In reference to Jung's personal e-mail account, U&I alleges that a search of Jung's personal e-mail account was conducted and no responsive documents were found.  According to U&I's counsel, Jung's personal e-mail account is maintained on-line and there is no downloaded version on Jung's hard drive.  (Id.)  Further, in reference to the disputed e-mails, U&I's counsel states that he:

> did not consider, at that time, those 2004 and/or 2005 e-mails as necessary information to further intentional store or qualify for special preservation as the e-mails at issue are business negotiations on a draft document between U&I and Zimmer Spine, which was finalized in an executed document back in November 2005 and any such communications would have been most likely ruled inadmissable as parol evidence in any litigation regarding the same.

(Id. at 5)[9]

Regarding the "unloadable" or unretrievable 2004 e-mails, U&I argues that Jung's affidavit and the data report prove that the company's 2004 e-mails are unrecoverable.  (Id. at 5-6)  Contrary

---

[9]   U&I's counsel does not clarify the specific time frame when he believed it was unnecessary to maintain  2004 and/or 2005 e-mails for "special preservation."  However, at the discovery hearing, U&I's counsel  acknowledged that he received a letter dated August 15, 2006 from AMD's counsel requesting that all relevant documents related to the litigation be preserved. (Dkts. 104, 106)  Further, this court's July 13, 2007 order on AMD's motion to compel established a time frame beginning on January 1, 2003 for the production of relevant documents.

to the facts in <u>In re Ford Motor Co.</u>, 345 F.3d 1315 (11th Cir. 2003), U&I insists that the instant situation does not support a finding of non-compliance with the court's orders because U&I notified AMD that the 2004 e-mails were lost due to computer and server problems.  U&I further contends it disposed of the failed hard drive in January 2005 and took all reasonable precautions to preserve electronic information.  Finally, U&I argues that sanctions should be denied because the court previously denied AMD's request for attorney's fees regarding an earlier motion to compel.

   D. <u>AMD's Motion for Protective Order and Motion for Sanctions (Dkt.77)</u>

   On December 14, 2007, AMD filed a Motion for Protective Order seeking an order quashing seven subpoenas issued by U&I on November 26, 2006.  (Dkt. 77)  U&I's subpoenas request the production of documents by non-parties by December 17, 2007.[10]  AMD argues that the subpoenas call for the production of documents past the discovery cut-off date of December 10, 2007.   In addition, AMD contends that the  non-party subpoenas are harassing in nature and seek irrelevant information.  AMD further asserts that copies of the non-party subpoenas were not served upon AMD.  AMD seeks sanctions against U&I for its failure to obey the court's order regarding the discovery deadline and requests that the court award AMD fees and costs associated with the motion.  (Dkt. 77 at 5)

   In response, U&I contends that the non-party subpoenas are directly linked to the deposition of AMD's representative.  U&I asserts that it served copies of these non-party subpoenas upon AMD's counsel and AMD was not harmed by any delay in the receipt of these subpoenas.  (<u>Id.</u> at 5)

---

[10] According to AMD, six of the subpoenas were served on six entities that share Defendant's registered agent, Robert DiMarco.  The seventh subpoena was served upon the "United States District Court Massachusetts District Court."  (Dkt. 77, Exh. B)

E.      AMD's Second Motion for Protective Order and Motion for Sanction (Dkt. 81)

On December 21, 2007, AMD filed a Second Motion for Protective Order seeking to quash U&I's subpoena of Robert DiMarco, U&I's notice of taking deposition of AMD's corporate representative, Plaintiff's First Set of Expert Interrogatories, Plaintiff's Third Request for Production of Documents and Plaintiff's Third Set of Interrogatories.  (Dkt. 81)

In response, U&I argued that it attempted to set the deposition of AMD's corporate representative prior to the discovery cut-off.  (Dkt. 84)  U&I asserted that the remaining requested discovery was relevant to U&I's affirmative defenses.  (Id.)

AMD's Second Motion for Protective Order as to the deposition of AMD's corporate representative was denied because the deposition was previously scheduled for October 2007 and continued by agreement of the parties.  (Dkt. 85)  However, as to the deposition of Robert DiMarco and U&I's discovery requests, the court granted AMD's motion for protective order because this discovery was sought in violation of the discovery deadline and U&I failed to show good cause to extend discovery.  (Dkt. 85 at 2)  The court deferred ruling on AMD's request for sanctions.  (Id.)

**III.    DISCUSSION**

A.      AMD's Motion for Protective Order and Motion for Sanctions (Dkt. 77)

The standard for issuance of a protective order is good cause.  Fed. R. Civ. P.  26( c).  To establish good cause, a party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1312, 1326 n. 3(5th Cir. 1978)(citation omitted).[11]  A court may limit discovery if it determines that: (1)

---

[11]  Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient and less burdensome, or (2) the party seeking the discovery had ample opportunity to obtain the information sought, or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)( C).

AMD's Motion for Protective Order demonstrates good cause to quash U&I's subpoenas. See Garrett, 571 F.2d at 1326 n.3 (5th Cir. 1978)(party seeking a protective order has the burden to demonstrate good cause for the need for a protective order). Here, U&I had the opportunity to conduct discovery until December 10, 2007. U&I requested the production of documents by non-parties by December 17, 2007. As such, Plaintiff's discovery requests are untimely and the court grants AMD's Motion for Protective Order. Further, sanctions in the form of the reasonable attorney's fees and costs incurred by AMD in filing the motion are appropriate as U & I's opposition to the protective order is not substantially justified and there are no other circumstances which make an award of sanctions unjust.[12]

B.    AMD's Motion to Compel and Motions for Sanctions (Dkts. 41, 92)

Under Rule 34(a), a party may request the responding party to produce and permit the requesting party to inspect and copy any designated documents. Fed. R. Civ. P. 34(a). Rule 34 does not grant unrestricted access to a respondent's database compilations. In re Ford Motor Co., 345 F.3d 1315, 1316 (11th Cir. 2003). Instead, Rule 34(a) allows a requesting party to inspect and to copy the product (whether it is a document, disk or other device) resulting from the respondent's translation of the data into a reasonably usable form. Id. at 1316-1317. If there is improper conduct

---

[12]   However, the court declines to award sanctions against U&I due to AMD's Second Motion for Protective Order and Motion for Sanctions (Dkt. 81) because this motion was granted in part and denied in part. (Dkt. 85)

on the part of the responding party, the requesting party may need to check the data compilation. Id. at 1317.  However, to gain direct access to the respondent's databases, the court must make a factual finding of some non-compliance with discovery rules and protect respondent with respect to preservation of his records, confidentiality of non-discoverable matters and costs.  Id.

Pursuant to Rule 26, the parties are expected to confer and discuss any issues relating to the disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.    Fed. R. Civ. P. 26(f) advisory committee's notes (2006).  It may be important for the parties to discuss their systems and important  for  counsel to  become familiar with those systems before conferring about electronically stored information.  Id.

On a motion to compel, a responding party need not provide discovery of electronically stored information from sources that the responding party identifies as not reasonably accessible because of undue burden or cost. Fed. R. Civ. P. 26(b)(2)(B).  The burden is on the responding party to make this showing;  if the responding party succeeds, the court may nevertheless order discovery from such sources if the requesting party shows good cause.  Fed. R. Civ. P. 26(b)(2)( C).  In deciding whether to permit discovery of electronically stored information, a court will consider whether the burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount of in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.  Id.  A court may also specify conditions for the discovery of electronically stored information.  Fed. R. Civ. P. 26(b)(2)(B).

If a party disobeys a court order requiring production of documents, the court may enter such orders  as are just, including the sanctions enumerated in Rule 37(b)(2).   Sanctions may be

granted against a party under Rule 37 if there is non-compliance with a court order, notwithstanding a lack of wilfulness or bad faith, although such factors are relevant to the sanctions imposed.  In re Seroquel Prods, Liab. Litig., 244 F.R.D. 650, 656 (M.D. Fla. 2007).  For purposes of Rule 37, an incomplete response is to be treated as a failure to respond.  Fed. R. Civ. P. 37(a)(3).

Rule 37 authorizes a court to impose the following sanctions: an order that facts in dispute be taken to be established in favor of the party seeking the motion, an order precluding the party refusing to comply with the order from opposing or presenting evidence in opposition to the movant's claim, and an order striking the offending party's pleading. Fed. R. Civ. P. 37(b)(2).  The court may also order, in lieu of or in addition to these sanctions, that the party pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make such an award unjust.  Id.

Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process.  Aztec Steel Co. v. Fla. Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982).  The most severe spectrum of sanctions must be available to district courts not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.  National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Here, the record demonstrates beyond dispute that AMD incurred unnecessary expense and delays in attempting to obtain U&I's compliance with legitimate discovery requests.  U&I repeatedly delayed the production of responsive documents.[13] For instance, on September 12, 2007,

---

[13] U&I emphasizes the volume of documents produced as evidence of its good faith and justification for its belated production.  The court is not impressed with the number of documents produced, especially since the majority of the documents were produced only after AMD filed

U&I asserted that it had fully responded to AMD's First Request for Production of Documents. Nevertheless, U&I provided AMD approximately 10,000 documents on 13 occasions from September 18, 2007 to January 16, 2008. As the result of U&I's sporadic and incomplete document production, AMD filed four motions compelling U&I to produce all responsive documents to AMD's First Request for Production of Documents.

Other examples of U&I's misconduct are U&I's delay in advising AMD concerning the "unloadable" 2004 e-mails and U&I's failure to provide attachments to e-mails. While U&I knew as early as January 2005 that the 2004 e-mails were "unloadable" because of a failure with its hard drives, U&I neglected to inform AMD of this fact when it initially responded to AMD's document request. Instead, U&I waited until AMD filed a motion to compel and then advised AMD and the court that these e-mails were unrecoverable. Similarly, by neglecting to produce the attachments to e-mails, U&I further postponed the production of documents.[14] Given the discovery deadline of December 10, 2007, U&I's actions may have benefitted U&I by limiting the time available to review the belatedly produced documents and to depose witnesses regarding these documents.

Equally reprehensible is U&I's failure to produce e-mails between it and Zimmer Spine. In response to a non-party document request, Zimmer Spine produced numerous 2005 and 2006 e-mails between Zimmer Spine and U&I employees. AMD correctly points out that these 2005 and 2006 e-mails would not have been affected by U&I' alleged server problem. Jung's affidavit asserts that it is U&I's company policy to keep all data, including e-mail information from employees (past

motions to compel and this court directed U&I to produce all responsive documents.

[14] The dubious practice of producing e-mails without attachments in federal discovery has not gone unnoticed by other courts. See e.g. PSEG Power N.Y., Inc. v. Alberici Constructors, Inc., No. 1:05-CV-657 (DNH/RFT), 2007 WL 2687670 at * 5-7 (N.D.N.Y. Sept. 7, 2007) .

and current), on the main server.  Thus, even assuming U&I disposed of the faulty hard drive in January 2005, internal documents and e-mails from 2005 and 2006 should have been preserved on the new hard drive in compliance with U&I's retention policy.  Although U&I's counsel argues that he did not believe it was necessary to retain 2004 and 2005 e-mails because these documents would be inadmissible as parole evidence, the touchstone of discovery is not admissibility but relevance. Further, such a belief on counsel's part is contrary to the court's ruling on July 13, 2007 regarding the proper time frame for AMD's document requests.

Also  perplexing is  U&I's failure to produce any responsive internal documents between U&I employees.  While U&I asserts that it has produced all requested information, it seems highly unlikely that not even one e-mail responsive to AMD's document requests would not be produced. In reference to documents contained on the personal computers of U&I's agents and employees (past and present), U&I contends that these computers were searched and no responsive non-privileged documents were located.  However, U&I fails to submit an affidavit from a knowledgeable individual verifying the scope of the search, the efforts taken to locate documents, the inability to identify and produce such documents and the date when these documents were deleted or removed from the personal computers.

U&I's assertion that the delay in providing documents to AMD was caused by the international travel requirements of its employees, server and software problems, confusion, language barriers of its employees and the lack of understanding of the American legal system does not excuse U&I's tardy and incomplete responses.  After all, U&I was the party which filed this lawsuit.  Indeed, U&I admitted that it received letter in the summer of 2006  from AMD requesting that U&I retain all relevant documents related to the dispute between the parties.  U&I's counsel

16

should have been familiar with U&I's document retention policy and computer systems prior to conferring with AMD regarding discovery.   At the outset of the litigation, U&I and its counsel had the responsibility to take affirmative steps to ensure that all sources of discoverable information were identified, searched, and reviewed so that complete and timely responses to discovery requests could be provided.

It is not the court's role,  nor that of opposing counsel, to drag a party kicking and screaming through the discovery process.  U&I has failed to show substantial justification for its failure and unwillingness to abide by discovery rules and the court's prior orders in connection with AMD's Motion for Sanctions (Dkt. 41) , Defendant's Motion for Protective Order and Motion for Sanctions (Dkt.77) and, Defendant's Motion to Compel and Motion for Sanctions (Dkt. 92).  U&I is therefore assessed the reasonable attorney's fees and costs incurred by AMD in connection with these motions.[15]

Although federal courts have the inherent power to dismiss an action for misconduct that abuses the judicial process and threatens the integrity of that process, based on the present record such a sanction is premature and unwarranted.  However, the conclusion is inescapable that lesser sanctions are both appropriate and necessary to compensate AMD for its expenses and to deter U&I

---

[15]  On August 8, 2007, AMD filed a Motion for Attorneys' Fees (Dkt. 36) for bringing its first motion to compel.  (Dkt. 36)  On October 24, 2007, the court denied this motion because AMD's motion to compel was granted in part and denied in part.  (Dkt. 55)  AMD has not sought reconsideration of this order.  However, in seeking an award of $66,321.09 for the reasonable attorneys' fees and costs incurred during discovery, AMD includes the fees and costs associated with AMD's first motion to compel.  (Dkt. 92 at 14 and Dkt. 105)   To the extent that AMD demonstrates that a portion of the fees and costs incurred in filing its first motion to compel relates to U&I's failure to produce documents in violation of the court's rules and orders, the court will reconsider the October 24, 2007 order.

from future discovery violations and disregard for court orders.  Thus, in addition to monetary sanctions under Rule 37, and based upon good cause, AMD is also entitled to a limited inspection of  U&I's computer hard drives used by certain employees, as set forth below.

The court finds that burden and expense of the independent inspection of the hard drives is outweighed by the benefits of the proposed discovery.  The proposed discovery is important in resolving the merits of AMD's $ 3 million counterclaim.  However, to allow AMD unrestricted access to U&I's computers and hard drives would constitute an undue burden.  Accordingly, AMD's motion to compel the inspection of hard drives used by certain U&I employees is granted to the extent that:

(1)     Within 10 days of this order, the parties shall select a qualified  independent third party forensic examiner to conduct a limited samples of information contained on all the hard drives used by Jung, Mickey Gwak and Sean Hur.[16]

(2)     The forensic examiner shall limit the examination of the hard drives to whether, during the periods of December 1, 2004 through December 31, 2004; January 1, 2005 through January 31, 2005 and February 1, 2006  through February 28, 2006, there are any responsive documents pursuant to the court's order of July 13, 2007 which have not been produced by U&I.

(3)     The three computer hard drives belonging to Jung, Gwak, and Hur shall be delivered by U&I to the examiner at the examiner's place of business within 10 days of the examiner's selection.  During the sampling of the hard drives, the forensic examiner

---

[16]   At this time, the court will not authorize a sampling of  the hard drive of U&I's counsel's computer.  However, should the examiner's findings provide a basis for such a sampling, it may be appropriate to reconsider this request.

18

shall also determine whether any responsive documents have been transferred or deleted from these hard drives, including the date of any transfer and deletion of data.

(4)    The sampling of the hard drives by the forensic examiner shall be conducted outside the presence of the parties or their attorneys and shall be completed within 45 days of this order;

(5)    After the sampling is completed,  the forensic examiner shall provide a hard copy of his proposed findings to U&I's counsel for review prior to furnishing them to AMD's counsel.

(6)    In the event that U&I objects to any of the findings being furnished to AMD, U&I shall file a motion for protective order within ten days of the receipt of the findings. If no such motion is filed within this period, the forensic examiner shall furnish a copy of the findings to AMD.

(7)    All costs for the examiner shall be born by AMD.  However, if the examiner's search reveals responsive documents which have not been produced by U&I or the transfer or deletion of responsive documents in violation of discovery rules and the court's orders, the court will consider shifting part, or all of the costs of the examination to U&I, among other sanctions.

It is further ordered that:

(1)    Defendant's Motion for Protective Order (Dkt. 77) is **GRANTED.**

(2)    Defendant's Second Motion for Sanctions (Dkt. 81) is **DENIED**.

(3)    Sanctions of reasonable attorneys' fees and costs in connection with **Defendant's**

**Motion for Sanctions** (Dkt. 41),  **Defendant's Motion for Protective Order and Motion for Sanctions** (Dkt.77) and **Defendant's Motion to Compel and Motion for Sanctions** (Dkt. 92) are imposed on U&I pursuant to Rule 37, Fed. R. Civ. P.

(4)     The parties are directed to confer in a good faith effort to agree on the amount of reasonable attorneys' fees and costs.  If an agreement is reached, the parties shall file a stipulation within 10 days of this order.   If there is no agreement, U&I shall file a response to AMD's request for reasonable attorneys' fees and costs (Dkt. 105) within 20 days of this order.

**DONE AND ORDERED** in Tampa, Florida on this 26th  day of March, 2008.

ELIZABETH A JENKINS
United States Magistrate Judge